UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID PETERSON,

                                    Plaintiff,

  - v -                                                 9:19-CV-569
                                                            (GTS/DJS)

J. LINDSTRAND, *Deputy Superintendent for Administration, Great Meadow Correctional Facility*, *et al.*,

                                    Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

DAVID PETERSON
Plaintiff, *Pro Se*
01-A-6826
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

HON. LETITIA JAMES                    DAVID C. WHITE, ESQ.
Attorney General for the State of New York  Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION and ORDER[1]

Plaintiff David Peterson ("Plaintiff") brought this action under 42 U.S.C. § 1983 alleging that the Defendants violated his constitutional right to due process with respect

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

to an inmate disciplinary hearing held in 2014 while Plaintiff was an inmate at Great Meadow Correctional Facility. Dkt. No. 1, Compl. Defendants have now moved for summary judgment. Dkt. No. 56. Plaintiff opposes the Motion. Dkt. No. 66 ("Pl.'s Opp.").[2] For the following reasons, this Court recommends that the Motion for Summary Judgment be granted.

## I. BACKGROUND

In August 2014, Plaintiff was Chairman of the Inmate Liaison Committee ("ILC") at Great Meadow. Compl. at ¶ 12. He served on that committee with another inmate named Frank Povoski. *Id.* at ¶ 13. On August 14, 2014 while these inmates were meeting to discuss ILC business an altercation broke out. As a result of that altercation, Plaintiff was issued a misbehavior report which charged him with assaulting inmate Povoski, possession of a weapon, and fighting. Dkt. No. 1-1, Compl., Ex. A; Dkt. No. 56-1, White Decl., Ex. B. Plaintiff denied the allegations in the misbehavior report.

After being issued the misbehavior report Plaintiff was moved to the Special Housing Unit at Great Meadow. White Decl., Ex. A ("Pl.'s Dep."), p. 34. Pursuant to the relevant rules for the conduct of a disciplinary hearing, Plaintiff was given the opportunity to select an assistant to help him prior to the hearing and he selected Defendant Corlew. *Id.* at pp. 36-37; Dkt. No. 56-4, Corlew Decl. Corlew met with Plaintiff twice and admittedly provided him with some documents. Pl.'s Dep. at p. 37; Corlew Decl. at ¶ 8. Plaintiff's disciplinary hearing began on August 20, 2014 and was

---

[2] Plaintiff's opposition contains several documents filed together. For ease of reference, Plaintiff's response is cited by reference to the page numbers generated by the Court's CM/ECF system.

completed September 3, 2014 with Defendant Lindstrand presiding.  Dkt. No. 56-5, Lindstrand Decl. at ¶ 7.  At the hearing Plaintiff and five other individuals testified.  *Id.* at ¶ 10.  Plaintiff was found guilty of all charges and sentenced to, *inter alia*, 365 days in SHU.  *Id.* at Ex. C.  Plaintiff administratively appealed to the Superintendent, Defendant Miller, who affirmed the determination.  Dkt. No. 56-6, Miller Decl., Ex. A.  A subsequent appeal to Defendant Venettozzi also resulted in an affirmance.  Dkt. No. 56-7, Venettozzi Decl., Ex. A.

Plaintiff ultimately secured a reversal of the disciplinary determination in state court.  Pl.'s Dep. at pp. 56-57.  Upon a rehearing, he was found not guilty of the charges.  *Id.* at pp. 74-75.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(C); see also *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are

3

ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Defendants seek summary judgment dismissing Plaintiff's claims in their entirety on several grounds. First, they seek summary judgment on the ground that no protected liberty interest was implicated in this case. Dkt. No. 56-3, Defs.' Mem. of Law at p. 5. Next, they seek summary judgment on the ground that Plaintiff received all the process due to him under the circumstances. *Id.* at pp. 6-12. Third, they seek summary judgment based on the doctrine of qualified immunity. *Id.* at pp. 12-13. Fourth, Defendants contend that Plaintiff's claim is untimely. *Id.* at pp. 13-14. Finally, they contend that Plaintiff is not entitled to the injunctive relief he seeks. *Id.* at pp. 14-15.

### A. Due Process

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).

#### *1. Liberty Interest*

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 483-84. To determine whether an inmate has suffered an "atypical and significant hardship," the

5

conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Palmer v. Richards*, 364 F. 3d 60, 64 (2d Cir. 2004). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *Id.* While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

Here, Plaintiff testified, and nothing in the record refutes, that he was held in SHU for 365 days as the result of the determination at issue. Pl.'s Dep. at p. 56. He alleges that he was denied recreation and showers, among other things. Compl. at ¶¶ 83 & 85. Defendants have offered no evidence to challenge these assertions and so the Court concludes that Plaintiff has made sufficient allegations to at least survive summary judgment on the question of whether a protected liberty interest was implicated on these facts. *See, e.g.*, *Greenburger v. Roundtree*, 2020 WL 6561598, at *5 (S.D.N.Y. Jan. 16, 2020), *report and recommendation adopted*, 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020) (holding that the length of confinement combined with the particular facts of the confinement present unique factual questions that may not be resolved on summary judgment).

### *2. The Process Due*

In the context of an inmate disciplinary proceeding, due process requires that the inmate be: (1) afforded advance written notice of the charges against him; (2) provided a written statement supporting the disposition and reasons for the disciplinary action taken;

(3) permitted to call witnesses and present documentary evidence; (4) entitled to a fair and impartial hearing officer; and (5) found guilty only if the disposition is supported by at least "some evidence." *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (citing cases). Additionally because Plaintiff was confined to a special housing unit prior to his disciplinary hearing he was also entitled to an employee assistant. *Clark v. Gardner*, 256 F. Supp. 3d 154, 170 (N.D.N.Y. 2017).

"To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008). This is so because, as the Second Circuit has noted, "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991).

Plaintiff makes four specific claims regarding the alleged deprivation of due process: 1) denial of the right to assistance; 2) denial of the right to an impartial hearing officer; 3) right to documentary evidence; and 4) lack of reliable evidence to support the determination. Compl. at ¶¶ 30-82. Each claim is considered below and as to each the Court recommends that summary judgment is appropriate.

### *a. Right to Assistance*

Defendant Corlew was Plaintiff's employee assistant. Compl. at ¶ 31. Plaintiff claims that Corlew violated his rights by refusing to question potential witnesses and failing to obtain documentary evidence. *Id.* at ¶¶ 32-33.

"An inmate's right to assistance with his disciplinary hearing is limited." *Young v. Polizzi*, 2018 WL 3949967, at *7 (N.D.N.Y. July 11, 2018), *report and recommendation adopted*, 2018 WL 3949942 (N.D.N.Y. Aug. 16, 2018). The employee assistant "need only perform what the plaintiff would have done but need not go beyond the inmate's instructions." *Id.* Whatever the full extent of the required inmate assistance may be, the Second Circuit has concluded that "such help certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses." *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988).

Plaintiff claims that he asked Corlew to interview two potential inmate witnesses an inmate named Powell, also a member of the ILC, and Povoski. Comp. at ¶ 32. Corlew's Declaration in support of summary judgment does not reference this request. *See generally* Corlew Decl. That portion of her inmate assistance documentation which includes a place to list interview requests from the inmate is blank. *Id.* at Ex. A. This raises a question of fact as to whether Plaintiff, in fact, made these requests and/or whether they were ignored by Corlew.

"However, any violations of this qualified right are reviewed for harmless error." *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (internal quotation omitted). As a result, even assuming for purposes of this Motion, that the requests were made, the Court

recommends finding that the failure to conduct the interviews was harmless. First, Powell refused to testify at Plaintiff's disciplinary hearing, Lindstrand Decl. at ¶ 11, and so Plaintiff can show no prejudice from not having him interviewed prior to his testimony. *Sawyer v. Prack*, 2016 WL 5440596, at *12 (N.D.N.Y. July 29, 2016), *report and recommendation adopted*, 2016 WL 5415790 (N.D.N.Y. Sept. 28, 2016). As to Povoski, Plaintiff concedes that he was permitted to call him as a witness at the disciplinary hearing. Pl.'s Dep. at p. 44. Given that Plaintiff was afforded the opportunity to question Povoski at the actual hearing and that he cites no specific prejudice suffered as a result of not having Povoski interviewed prior to that testimony any error in not conducting that interview was harmless. *Melendez v. Fischer*, 2013 WL 5592497, at *4 (W.D.N.Y. Oct. 10, 2013). "Even if it would have been preferable to have obtained statements from them for plaintiff's review prior to the hearing, plaintiff has not shown or explained how the hearing would likely have had a different outcome if that had been done." *Loving v. Selsky*, 2009 WL 87452, at *3 (W.D.N.Y. Jan. 12, 2009).

With respect to documentation, the record establishes that Corlew provided Plaintiff with some documentation relevant to the disciplinary hearing. Corlew Decl. at ¶ 8; Pl.'s Dep. at p. 37. Plaintiff objects on the basis that he should also have been provided with additional documents including the unusual incident report ("UI"), certain medical reports, and photographs of the weapon allegedly used during the incident. Compl. at p. 8. Corlew advised Plaintiff that the unusual incident report was not available at the time of the assistance and that photographs of the weapon would be available at the disciplinary hearing. Corlew Decl. at ¶ 10. The UI was read to Plaintiff during the

9

hearing, and he was shown photos of the weapon at that time as well. Pl.'s Dep. at p. 49. Plaintiff was not entitled to the medical records of another inmate. *Boose v. Schneider*, 2016 WL 8732644, at *6 (N.D.N.Y. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 1175224 (N.D.N.Y. Mar. 24, 2016). As a result, Plaintiff was either not entitled to documents requested from Corlew or was eventually provided with them and cannot establish prejudice from the alleged denial of the documents during the assistance phase. *Powell v. Coughlin*, 953 F.2d at 750.

### b. Impartial Hearing Officer

Plaintiff also makes numerous allegations of bias against Lindstrand. Compl. at ¶¶ 37-82; *see also* Pl.'s Opp. at pp. 10-26. Among them are claims that Lindstrand was biased against Plaintiff because Plaintiff had taken such a strong pro-inmate stand in his role on the Inmate Liaison Committee. Compl. at ¶ 38. Relatedly, he claims that Lindstrand was favorably inclined to Plaintiff's alleged victim, who Plaintiff characterizes as a "pro administration" member of the ILC. *Id.* at ¶ 40. Plaintiff also alleges that Lindstrand had not been properly designated to act as a hearing officer. *Id.* at ¶ 39. Finally, Plaintiff alleges that Lindstrand engaged in improper off the record conduct that demonstrated a bias against him. *Id.* at ¶¶42-48. None of these claims is sufficient to withstand summary judgment.

"An impartial hearing officer is one who 'does not prejudge the evidence' or an inmate's guilt." *Sowell v. Bullis*, 2016 WL 1696454, at *13 (N.D.N.Y. Mar. 25, 2016), *report and recommendation adopted*, 2016 WL 1700410 (N.D.N.Y. Apr. 27, 2016). With respect to Plaintiff's claims of favoritism or improper off the record conduct, "Plaintiff's

10

unsupported assertion is the only evidence of this [conduct]. Where claims of bias are based on purely conclusory allegations, 'they are routinely dismissed.'" *Williams v. Chuttey*, 2017 WL 9673722, at *11 (N.D.N.Y. Sept. 5, 2017), *report and recommendation adopted*, 2018 WL 1413049 (N.D.N.Y. Mar. 21, 2018) (quoting *McAllister v. Call*, 2014 WL 5475293, at *12 (N.D.N.Y. Oct. 29, 2014) ); *see also Brown v. Dubois*, 2017 WL 9511165, at *3 (N.D.N.Y. Feb. 28, 2017), *report and recommendation adopted*, 2017 WL 1102746 (N.D.N.Y. Mar. 24, 2017) ("Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed."); *Lopez v. Whitmore*, 2015 WL 4394604, at *11 (N.D.N.Y. July 16, 2015) ("An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact."). Prison officials serving as hearing officers "are presumed to be unbiased." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Nothing in Plaintiff's Complaint rebuts that presumption here.

While Plaintiff claims that Lindstrand was not authorized to conduct the hearing, the record demonstrates otherwise. At the time of the hearing Lindstrand served as a Deputy Superintendent at Great Meadow. Lindstrand Decl. at ¶ 1. Deputy Superintendents are specifically authorized to conduct Tier III superintendent's hearings under state law. *Tevault v. Prack*, 131 A.D.3d 776, 776 (3rd Dep't 2015) (citing 7 N.Y.C.R.R. § 254.1)). The record establishes that Plaintiff's claim, for which he cites no authority, that the Superintendent must specifically appoint each hearing officer is incorrect. Miller Decl. at ¶ 6.

### *c. Documentary Evidence*

Inmates have a right to present documentary evidence at their disciplinary hearing. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). "[A]n inmate's right to present documentary evidence in his defense does not entail an obligation on the part of prison officials to retrieve every document that an inmate requests for his case. Even when documents are relevant and obtainable." *Amaker v. Coombe*, 2002 WL 523388, at *10 (S.D.N.Y. Mar. 29, 2002). Plaintiff alleges that three documents were improperly withheld from him during the course of his disciplinary hearing. As to none of them, however, can Plaintiff establish either that withholding the document was erroneous or that he suffered the requisite prejudice.

First, Plaintiff objects that he was not provided with a copy of the Unusual Incident Report addressing this incident prior to the hearing. Compl. at ¶ 54. Lindstrand stated that under DOCCS policy he could not provide Plaintiff a copy of the Unusual Incident Report because it was still a draft. Lindstrand Decl. at ¶ 12. Plaintiff concedes, however, that the Report was read to him at the hearing by Defendant Lindstrand. Compl. at ¶ 60. As a result, he was aware of the contents of the report and has not established prejudice from the fact that he did not have an actual copy of the report.[3]

Second, Plaintiff also objects to the failure to disclose inmate Povolski's medical records to him. Pl.'s Opp. at p. 16. Lindstrand declined to provide this information based, in part, on privacy concerns regarding another inmate's medical records. Lindstrand

---

[3] Plaintiff's assertion that the UI had actually been finalized at the time of his hearing, Pl.'s Opp. at p. 16, is of no moment. The draft UI was the document upon which the hearing officer relied and so is the only relevant document for this Court's consideration.

Decl. at ¶ 13. Doing so was reasonable and did not violate Plaintiff's right to due process. *Boose v. Schneider*, 2016 WL 8732644, at *6 (N.D.N.Y. Feb. 19, 2016); *Dukes v. Schuck*, 2013 WL 12181002, at *5 (W.D.N.Y. Sept. 17, 2013). Nor can Plaintiff establish that denying him access to the medical records prejudiced him. "To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008). This Court has reviewed the relevant medical record in camera and it reflects injuries consistent with facts alleged in the misbehavior report.

Plaintiff also claims he was improperly denied a copy of the proper misbehavior report because, as he contends, there is a dispute as to whether the report was issued by Sgt. Woodruff or Corrections Officer Babbie. Compl. at ¶¶ 68-73. The two versions of the misbehavior report are virtually identical. *Compare* Compl. Ex. J *with* White Decl., Ex. B. The substance of the two reports is the same, they deviate only with regard to a few typographical matters. *Id.* This discrepancy does not amount to a due process violation because Plaintiff has demonstrated no prejudice from it. The discrepancy between the documents is minor and Plaintiff was able to question both people he alleges authored the report at his hearing. Lindstrand Decl. at ¶ 10; Dkt. No. 66-1, Exs. to Pl.'s Opp. at pp. 43-47 & 59-67.

### d. Some Evidence

Finally, Plaintiff alleges that there was insufficient evidence to support the charge in the misbehavior report. Compl. at ¶¶ 77-82. This claim is based on his allegation that

13

no correctional staff observed the incident and that Lindstrand failed to consider evidence supportive of his claims. *Id.* Summary judgment is clearly appropriate as to this portion of Plaintiff's claim.

"The Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by some evidence." *McDonald v. Zerniak*, 2016 WL 6581289, at *5 (N.D.N.Y. Nov. 4, 2016) (internal quotation and alteration omitted). This requires the Court to determine "whether there was reliable evidence of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004). Plaintiff was charged with stabbing a fellow inmate. White Decl. at Ex. B. That inmate testified that Plaintiff stabbed him. Exs. to Pl.'s Opp. at p. 38. That was clearly "some evidence" sufficient to satisfy due process. *Livingston v. Kelly*, 423 Fed. Appx. 37, 40 (2d Cir. 2011). Moreover, there was additional testimony from several correctional officials that was consistent with the misbehavior report. The "some evidence" standard is satisfied when hearing testimony was consistent with the written misbehavior report. *See Hinton v. Prack*, 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citation omitted) ("some evidence" standard satisfied where the misbehavior report was made by the officer personally involved in the incident and was based upon his firsthand observation and detailed account of the incident); *Kotler v. Daby*, 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013) (same); *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (same).

*e. Defendants Miller and Venettozzi*

Plaintiff alleges that Defendants Miller and Venettozzi violated his rights by affirming the disciplinary determination despite their knowledge of the alleged violations discussed above. Pl.'s Opp. at pp. 38-39.

For the reasons set forth above, Plaintiff cannot establish a violation of his due process rights. Thus, these Defendants could not be liable for failing to remedy such violations. Moreover, Plaintiff has failed to establish the personal involvement of either Defendant here.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Despite this rule, the Second Circuit for some time held that a supervisory official could be held liable under circumstances related to that supervisory role that did not involve their direct action. *See Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *Colon* set forth five theories of liability that could apply to supervisory officials. *Id.* at 873. The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), however, "engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 206 n. 14 (2d Cir. 2012). The conflict remained unresolved until the Second Circuit's decision in *Tangreti v. Bachmann* which concluded that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a

15

plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

Plaintiff's opposition regarding the supervisory officials relies on pre-*Tangreti* caselaw that permitted liability under *Colon* based on a failure of a supervisor to take corrective action. Pl.'s Opp. at pp. 27-28 (citing cases). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test." *Fabrizio v. Smith*, 2021 WL 2211206, at *10 (citing cases).

*Tangreti* requires that Plaintiff allege and establish that Defendants violated his rights "by [their] own conduct, not by reason of [their] supervision of others who committed the violation." 983 F.3d at 619. Plaintiff's allegation here is that Miller and Venettozzi knew of the violations of others and did nothing to remedy them. That is insufficient to establish their personal involvement. As a result, Plaintiff has failed to "establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Tangreti v. Bachmann*, 983 F.3d at 618 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)); *see also Jackson v. Polizzi*, 2021 WL 5909979, at *4 (S.D.N.Y. Dec. 13, 2021); *Abdul-Halim v. Bruyere*, 2021 WL 3783087, at *3 (N.D.N.Y. Aug. 26, 2021).

## B. Qualified Immunity

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently

clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiff claims that despite an obligation to collect documents and interview witnesses on his behalf Corlew refused to do so. Pl.'s Opp. at p. 10. The Second Circuit has identified those as functions an inmate assistant should perform. *See Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988). This right to assistance is clearly established. *Wolff v. McDonnell*, 418 U.S. at 563-64. While the Court concludes above that, even assuming the truth of Plaintiff's allegations, summary judgment is appropriate for Corlew on the merits because any error was harmless, the Court does not believe that given the clearly established nature of the right qualified immunity is an appropriate ground for summary judgment as to Corlew. This is because the record may suggest, when viewed in the light most favorable to Plaintiff, that Plaintiff requested Corlew to do certain things which she simply did not do.

Under the appropriate standards, however, the remaining Defendants are entitled to qualified immunity as no reasonable official in their position could have known that the conduct alleged here violated any clearly established right of Plaintiff.

First, as to Miller and Venettozzi, under pre-*Tangreti* caselaw courts in the Second Circuit differed in their approach as to whether supervisory individuals were personally involved in alleged due process violations merely for affirming disciplinary determinations. Under those circumstances, qualified immunity is clearly appropriate. *McGriff v. Keyser*, 2019 WL 6033421, at *9 (S.D.N.Y. Nov. 13, 2019); *Lebron v. Mrzyglod*, 2017 WL 365493, at *9 (S.D.N.Y. Jan. 24, 2017)

Second, although the caselaw regarding the obligations of a hearing officer have long been well-established, no reasonable official in Defendant Lindstrand's position would have known that the manner in which he conducted Plaintiff's disciplinary hearing violated that established law. For example, no reasonable official could have known that actually reading a relevant document to Plaintiff during the course of the disciplinary hearing, rather than providing a printed copy could violate the inmate's rights. Nor would any reasonable official in Defendant Lindstrand's position know that refusing to turn over another inmate's medical records to Plaintiff was a violation of due process. For all the reasons discussed above, Defendant Lindstrand conducted Plaintiff's disciplinary hearing in a manner consistent with due process and is entitled to summary judgment.

For these reasons, the Court recommends that Defendants Lindstrand, Miller, and Venettozzi are also entitled to summary judgment on the basis of qualified immunity.[4]

## IV. CONCLUSION

For the reasons stated above, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 56) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 15, 2022
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[4] In light of the Court's conclusion on the merits and qualified immunity, it does not reach the remaining arguments advanced by Defendants.